UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATE WARD THACKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV2231 JAR |
| ) | |
| ETHICAL PRODUCTS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff's Motion for Summary Judgment on Counts I, II, III, and IV for Copyright Infringement (ECF No. 34) and Plaintiff's Motion for Summary Judgment that Defendant's Copyright Infringement Was Willful (ECF No. 35).

**BACKGROUND**

Plaintiff Kate Ward Thacker ("Plaintiff") has an incorporated family held business, Ward Thacker Studio, Inc. (Plaintiff's Statement of Uncontroverted Facts in Support of Plaintiff's Motion for Summary Judgment on Counts I, II, III, and IV" ("PSUF"), ECF No. 38, ¶2). Plaintiff is the owner of four copyrights ("Copyrighted Works"), which are at issue in this case. (PSUF, ¶¶5, 7, 9, 11, 13; Defendant's Statement of Facts ("DSUF"), ECF No. 42, ¶¶5, 7, 9, 11, 13, 99, 102, 120). On or around September 13, 2004, Plaintiff's representative and Defendant Ethical Products, Inc. ("Defendant" or "Ethical") entered into a License Agreement that authorized Defendant to sell certain products ("Licensed Products"), including Plaintiff's Copyrighted Works. (PSUF, ¶¶15-16). Under the License Agreement, Defendant was required to pay Plaintiff royalties for its use of Plaintiff's Copyrighted Works. (PSUF, ¶¶17-19). In turn, Defendant was authorized to sell Licensed Products that included "Pet Ceramic Products, such as Pet Bowls, Treat Jars, pet toys and

pet beds." (PSUF, ¶23). On August 22, 2006, Plaintiff and Defendant executed an addendum to the License Agreement that revised the royalty payment. (PSUF, ¶22).

The License Agreement allowed either Plaintiff or Defendant to terminate the License Agreement. (PSUF, ¶28). Under the License Agreement, the terminating party was required to give notice of its desire to terminate the License Agreement at least ninety (90) days prior to the expiration of either the initial term or any renewal term of the License Agreement. (PSUF, ¶29). If the License Agreement was terminated, Defendant had 180 days to sell its inventory. (PSUF, ¶30).

After the execution of the License Agreement, Defendant began making royalty payments to Plaintiff. (PSUF, ¶33). Defendant's last royalty payment to Plaintiff was on February 29, 2008. (PSUF, ¶34).

Plaintiff asserts that on or around February 25, 2008, Defendant sent a letter to Ms Thacker's Agent terminating the License Agreement. (PSUF, ¶68; ECF No. 38-21). In the letter, Defendant stated that it "has found it necessary to terminate our [Defendant's] royalty agreement with you effective December 31, 2007." (PSUF, ¶69; ECF No. 38-21).

After February 25, 2008, Defendant continued to sell the Licensed Products identified in the License Agreement. (PSUF, ¶¶71-74). Defendant testified that it failed to make royalty payments due for calendar years 2008, 2009 and 2012 due to an "administrative error." (PSUF, ¶¶75, 80; DSUF, ¶113). At least some of the Licensed Products sold by Defendant after the termination of the License Agreement were modified to remove the © followed by the numerical calendar year and the words "KATE WARD THACKER/Licensed by Rosenthal represents." (PSUF, ¶83). Defendant claims that the Licensed Products were not intentionally altered but that removal of the © was due to an error at the factory. (PSUF, ¶¶84-85; DSUF, ¶16).

Since February 25, 2008, Plaintiff has not spoken to anyone at Defendant.  (DSUF, ¶10). James Thacker, vice-president of Ward Thacker Studios, Inc., spoke directly to Defendant's representatives.  (DSUF, ¶11).  On December 6, 2010, James Thacker wrote to Defendant:

> our research has found that in February of 2008, EPI (Ethical Products, Inc.) did indeed notify Rosenthal Represents that you wished to terminate the license agreement.  However, according to the terms of the license agreement, that notification was five months too late to get the license agreement cancelled for 2008.  Therefore, you still owe us, at minimum, the $6,000.00 for the 2008 minimum royalty guarantee.  Our records indicate these funds have not been received.  It should also be noted that because it appears your attempt to cancel the license agreement in 2008 was not proper, EPI (Ethical Products, Inc.) also owes us at least the minimum royalty payment of $6,000.00 for 2009 and 2010, and even for 2011 because the time passed two months ago to effectively cancel the license agreement for 2011.

(DSUF, ¶12).

On January 11, 2011, James Thacker wrote to Defendant and stated:

> **To be sure you understand our position, please understand that we believe the License Agreement is still in force and active**.  That means that either the minimum guaranteed royalties from actual sales of licensed products for 2008 through 2011 are due from Ethical Products.

(DSUF, ¶13)(emphasis added).

Defendant claims that it ceased all sales of Licensed Products by December 2010 due to poor sales.  (DSUF, ¶19).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The substantive law determines which facts are critical and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Only

disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

## **DISCUSSION**

In order to ultimately prevail on their claim for copyright infringement, a plaintiff must establish two elements: (1) the plaintiff's ownership of a valid copyright, and (2) defendant's copying of the original elements of the plaintiff's copyright. Feist Publ'ns Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991); Rottlund Co. v. Pinnacle Corp., 452 F.3d 726, 731 (8th Cir. 2006); Reliant Care Mgmt., Co. v. Health Sys., No. 4:10CV38, 2011 U.S. Dist. LEXIS 104579, at *7 (E.D. Mo. Sept. 15, 2011). "Once a plaintiff has proven that he or she owns the copyright on a particular work, and that the defendant has infringed upon those exclusive

rights--that is, he has proven the two key elements of copyright infringement, ... --the defendant is liable for the infringement and this liability is absolute." Cass County Music Co. v. C.H.L.R., Inc., 88 F.3d 635, 637 (8th Cir. 1996)(citations and quotations omitted).

Here, the parties do not dispute that Plaintiff was the owner of the four copyrights at issue during the relevant time frame. The United States Copyright Office issued Plaintiff a certificate of registration for the Copyrighted Works on August 23, 2007. Likewise, there is no dispute that Defendant properly utilized the Copyrighted Works and sold Licensed Products until, at least, February 25, 2008. On September 13, 2004, Plaintiff and Defendant entered into the License Agreement whereby Defendant could utilize the Licensed Products.[1] The parties, however, dispute whether and when the License Agreement terminated. Thus, the crux of the parties' controversy is whether Defendant was authorized to employ the Copyrighted Works after February 25, 2008.

Plaintiff asserts that Defendant terminated the License Agreement on February 25, 2008, but that Defendant continued to sell Licensed Products in violation of the Copyright Act. Plaintiff maintains that Defendant's Copyright Act violations were wilful based upon the "long term relationship between Defendant and Plaintiff, as well as Defendant's uncontested knowledge of Plaintiff's four registered copyrights coupled with Defendant's close familiarity with Defendant's own Licensed Products that incorporated Plaintiff's four registered copyrights[.]" (ECF No. 35, ¶3).

In turn, Defendant contends that it failed to terminate the License Agreement on February 25, 2008. Defendant's failure to terminate the License Agreement left it effective and authorized Defendant to manufacture, market and sell the Licensed Products after February 25, 2008. In fact,

---

[1] When the parties signed the License Agreement on September 13, 2004, Plaintiff had not registered the relevant works with the U.S. Copyright Office. When the parties discovered that a third party was selling infringing products, Defendant's attorneys represented Plaintiff before the U.S. Copyright office and obtained registrations for all four Copyrighted Works. Thus, as of August 23, 2007, all four of the Copyrighted Works at issue were registered with the U.S. Copyright Office. (ECF No. 37, p. 7).

Defendant notes that on two separate occasions James Thacker wrote to Defendant stating Ward Thacker Studios, Inc.'s position that that License Agreement was still in effect and that Defendant still owed Plaintiff royalties.

The Court finds that an issue of fact exists regarding whether Defendant terminated the License Agreement.  Mr. Thacker now claims that he took the position that the License Agreement was in effect in settlement negotiations, but he does not believe that License Agreement was not terminated.  (ECF No. 47, pp. 5-7).  Although Plaintiff purports to provide an explanation for Mr. Thacker's statements, a reasonable jury could discount Mr. Thacker's account and determine that the License Agreement was not terminated.  See Rynders v. Williams, 650 F.3d 1188, 1194 (8th Cir. 2011)("Credibility determinations and the weighing of the evidence are jury functions, not those of a judge, ... and [t]he court should deny summary judgment if there is sufficient evidence for a jury to return a verdict for the non-moving party.")(internal citations omitted).  Also, under the terms of the License Agreement, Defendant had to provide ninety (90) days' notice, prior to the expiration of the term of the License Agreement, of its decision not to renew.  Given that Defendant notified Plaintiff on February 25, 2008 that it was not renewing the License Agreement, effective December 31, 2007, an issue of fact exists regarding whether and when the License Agreement terminated. Therefore, the Court denies Plaintiff's motion for summary judgment because Plaintiff's representative's own statements and the terms of the License Agreement demonstrate an issue of material fact regarding whether Defendant infringed on Plaintiff's Copyrighted Works.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment on Counts I, II, III, and IV for Copyright Infringement [34] and Plaintiff's Motion for Summary Judgment that Defendant's Copyright Infringement Was Willful [35] are **DENIED**.

- 7 -

Dated this 31st day of July, 2012.

                                                              _____
                                                              JOHN A. ROSS
                                                              UNITED STATES DISTRICT JUDGE